IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

UNITED STATES OF AMERICA

v.                                                    CASE NO.:  1:10-cr-16-SPM

ERIC JOSEF SCHULZ, et al.,

             Defendants.

_____/

## ORDER DENYING MOTIONS TO SUPPRESS

THIS CAUSE comes before the court on Defendant Kelly Ann Schulz's
Motion to Suppress Statements (doc. 42), Defendant Eric Josef Schulz's Motion
to Suppress Statements (doc. 43), Defendant Eric Josef Schulz's Motion to
Suppress Evidence (doc. 44), Defendant Kelly Ann Schulz's Motion to Suppress
Evidence (doc. 45) and the Government's Response in Opposition (doc. 49). A
suppression hearing was held on September 27, 2010, and February 1, 2011.
For the reasons expressed herein, the Motions to Suppress will be denied.

## BACKGROUND

Defendants are charged in a two-count indictment with conspiracy to
manufacture, distribute, and possess with intent to manufacture and distribute
more than 100 marijuana plants, and the manufacture and possession with intent
to distribute more than 100 marijuana plants. On March 11, 2010, at

approximately 2:00 p.m., police officers and agents associated with the Drug Enforcement Administration approached Defendants' property for purposes of conducting a knock and talk and to investigate the Defendants' property from an adjacent property. On the day before the search, an informant told Drug Enforcement Agent Gary Worth that Defendant Eric Schulz had a marijuana grow operation in his barn. This tip was relayed to Drug Enforcement Agent Wayne Andrews.

The Defendants' approximately nineteen acre property is a licensed nursery and farm. Several varieties of trees are grown at the property, most notably pecan trees. Somewhat near the residence, relative to the rest of the large parcel of land, is a secured and locked barn or outbuilding, with independent utility service and meter. Directly next to the barn is a small greenhouse.

A group of law enforcement officers, including Task Force Officer Gerald Hunter and Officer Conrad Hellwegge, approached Defendants from the front driveway of the property, while another group of law enforcement officers, including DEA Agent Andrews, approached the Defendants' property from an adjoining property. While approaching the Defendants' property from the Western adjacent property, Agent Andrews smelled flowering marijuana from the direction of the outbuilding, from a distance of about five to six feet. He observed that the nursery was overgrown, pots were located about 20 feet from outbuilding

or barn, and PBC pipe was placed about 25 feet from the outbuilding, between the outbuilding and the residence. Agent Andrews reported his observations to the officers approaching from the front of the property via radio.

When met by the law enforcement officers, Defendants were told that the officers had received information from an anonymous source that there was a marijuana grow operation at the property, that the odor of marijuana had been detected, and that the officers wanted their consent to search the property. Defendant Eric Josef Schulz verbally consented to the search, and said that he would point out the marijuana plants in his home. The Defendants were not placed in handcuffs or physically restrained. As Agent Andrews approached the Defendants from the neighboring property, he smelled marijuana from the north and south side of the residence.

Agent Andrews asked Defendant Eric Schulz if he had guns, and Defendant Eric Schulz admitted that the had guns upstairs in his home. Agent Andrews told him that possession of the guns would be a felony if the officers found marijuana.

Law enforcement officers asked the Defendants to sign a consent to search form. Defendant Eric Schulz was at first willing to sign the form. Eric's wife, Defendant Kelly Ann Schulz, asked the officers what "magic number" of plants would determine whether they would be charged with a state or federal offense. Officer Hellwegge told them that typically 100 plants occasions federal

prosecution. After a private conversation with his wife, Defendant Eric Schulz told the law enforcement officers that he preferred that they get a search warrant.

Officer Hunter left the scene and rushed to prepare an application for a search warrant at the resident office. Defendants were denied permission to return to the residence alone because Defendant Eric Schulz had already admitted that there were guns there which might be used to hurt the officers. Defendant Kelly Ann Schulz was escorted into the residence by law enforcement officers to use the restroom and to get a phone and phonebook. Officers told Defendants that they could call lawyers and recommended lawyers to them. Defendants were not told that they could not leave the property, but made no efforts to leave the property.

After completing the application for search warrant and the search warrant, Officer Hunter had the warrant approved by an assistant state attorney. The documents were then reviewed by Judge Griffis, and the search warrant was issued. During the suppression hearing, Officer Hunter admitted that there were mistakes in the search warrant and application. Most notably, although the affidavit for search warrant states that Agent Andrews smelled the odor of raw flowering marijuana coming from the outbuilding, and that Andrews' visual observations led him to believe that the outbuilding and residence were being used to grow marijuana, the search warrant itself references only a search of the

residence and premises, not the outbuilding or barn. Officer Hunter merely omitted to include the word "outbuilding" in the search warrant, and did not realize that "outbuilding" was not included in the search warrant until weeks or months later.

When Officer Hunter returned to the property, the search warrant was read to Defendants. Officers did a protective sweep of the residence before execution of the warrant. At the time of the execution of the search warrant, Agent Andrews asked Defendant Eric Schulz where the guns were. Defendant Eric Schulz stated that the guns were for hunting and protection. Agent Andrews smelled burnt marijuana on Defendant Eric Schulz's person.

Upon execution of the search warrant in the residence, marijuana was found in the master suite closet and bathroom. Officer Hunter told Agent Andrews that he could go search the outbuilding or barn, and the officers searched the outbuilding.

## DISCUSSION

### A. Statements

Defendants object to the admission of inculpatory statements made to law enforcement prior to and during the execution of the search warrant, on the ground that the Defendants were improperly interrogated without Miranda warnings. See Miranda v. Arizona, 384 U.S. 436 (1966). "A suspect is only entitled to Miranda warnings when he is interrogated while in custody, because

such circumstances are presumed to exert pressure on him to speak." United States v. Lall, 607 F.3d 1277, 1284 (11th Cir. 2010). "In determining whether a person was in custody, we look to whether he was physically deprived of his freedom in any significant way or if a reasonable person in the defendant's position would have understood that his freedom was so restrained." Id. "'[U]nder the objective standard, the reasonable person from whose perspective custody is defined is a reasonable innocent person.'" United States v. Street, 472 F.3d 1298, 1309 (11th Cir. 2006) (quoting United States v. Moya, 74 F.3d 1117, 1119 (11th Cir.1996) (internal quotation marks omitted)). "A defendant is in custody for the purposes of Miranda when there has been a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." United States v. Brown, 441 F.3d 1330, 1347 (11th Cir. 2006) (internal citations omitted). In determining whether a Defendant was in custody for Miranda purposes, courts "consider the totality of the circumstances, including whether the officers brandished weapons or touched the defendant, whether the officers used a language or tone indicating that compliance with their orders could be compelled, and the location and length of the detention." United States v. Ubaldo-Viezca, 2010 WL 3895710, at *6 (11th Cir. 2010). "Although the location of the interview is surely not dispositive in determining whether the interviewee was in custody, [c]ourts are much less likely to find the circumstances custodial when the interrogation occurs in familiar or at least neutral surroundings, such as

the suspect's home." <u>Brown</u>, 441 F.3d at 1348 (internal citations omitted).

"'Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by [the holding in <u>Miranda</u>].'" <u>Ubaldo-Viezca</u>, 2010 WL 3895710, at *6 (quoting <u>Miranda</u>, 384 U.S. at 478).

The statements at issue in the present case are not subject to suppression pursuant to Miranda because the Defendants were not in custody prior to or during the execution of the search warrant. There was no formal arrest of the Defendants, and the Defendants were not subjected to conditions akin to a formal arrest. First, the Defendants were approached by law enforcement at their property for the purpose of a knock-and-talk, which is a legitimate police procedure. <u>See</u> <u>United States v. Taylor</u>, 458 F.3d 1201 (11th Cir. 2006). "'[O]fficers are allowed to knock on a residence's door or otherwise approach a residence seeking to speak to the inhabitants just as any private citizen may.'" <u>Id.</u> at 1204 (quoting <u>Estate of Smith v. Marasco</u>, 318 F.3d 497, 519 (3d Cir. 2003)). Indeed, the description of the initial encounter given by Defendant Eric Schulz and law enforcement officers evidences a casual and consensual conversation, rather than a custodial interview. The conversation leading up to the Defendants' decision that the officers obtain a search warrant before searching the property took place in the Defendants' own yard. While the application for search warrant was being prepared and reviewed prior to approval, the Defendants remained on their own property, were allowed to enter

their residence, were restricted only to the extent reasonable to protect law enforcement officers from the weapons Defendant Eric Schulz acknowledged were within the home, and such restriction was explained to them. See Brown, 441 F.3d at 1348-49 (affirming district court's denial of motion to suppress where, "[a]lthough an officer accompanied [the defendant] throughout the house for safety reasons, he was free to eat, smoke, use the phone, and move about as he wished."); United States v. Opoku, 210 F. App'x. 848, 852 (affirming district court's denial of motion to suppress where defendant "freely moved about his apartment during the entire interview, albeit under the agents' supervision as a safety precaution."). Moreover, the Defendants were never told that they were not free to leave and officers never brandished their weapons or made other displays of force. In sum, there was simply no restraint on the Defendants' freedom to the extent associated with a formal arrest.

Moreover, some of the statements sought to be suppressed by Defendants were made voluntarily and without prompting from law enforcement officers, and therefore are not within the ambit of the Miranda requirements for custodial interrogations. For instance, Defendant Eric Schulz freely admitted that he was growing marijuana at his residence after officers announced the purpose of the knock-and-talk. Additionally, Defendant Kelly Schulz's question regarding the "magic number" of marijuana plants customary for federal prosecution was not prompted by officer's questioning.

However, the Court notes for the record, and the Government concedes, that the Defendants' refusal of consent to search their property is inadmissible as evidence of guilt at trial. <u>See</u> <u>United States v. Govea</u>, 270 F. App'x 884 (11th Cir. 2008). Accordingly, any statement or gesture attributable to either Defendant expressing a refusal of consent to a search of the property shall not be presented as evidence to the jury.

**B.      Warrant to Search Residence**

Defendants move to suppress evidence obtained during a search of the Defendants' residence pursuant to a search warrant. "Probable cause to support a search warrant exists when the totality of the circumstances allow a conclusion that there is a fair probability of finding contraband or evidence [of a crime] at a particular location." <u>United States v. Brundidge</u>, 170 F.3d 1350, 1352 (11th Cir. 1999). "[P]robable cause is a fluid concept-turning on the assessment of probabilities in particular factual contexts-not readily, or even usefully, reduced to a neat set of legal rules." <u>Illinois v. Gates</u>, 462 U.S. 213, 232 (1983). "[T]he practical nature of the magistrate's decision justifies 'great deference' upon review and calls for upholding the magistrate's findings even in marginal or doubtful cases." <u>United States v. Nixon</u>, 918 F.2d 895, 900 (11th Cir. 1990). "Where a search is conducted under the authority of a warrant, the defendant challenging the search carries the burden of showing the warrant to be invalid." <u>United States v. Osborne</u>, 630 F.2d 374, 377(5th Cir. 1980).

In the present case, Detective Hunter's affidavit in support of the search warrant reports that Agent Andrews had received information regarding a marijuana grow operation at the property, smelled raw flowering marijuana coming from an outbuilding on the property, observed black pots and pipes at the property, which appeared to be an inactive plant nursery, and therefore believed that the outbuilding and residence were being used to cultivate marijuana. Additionally, the affidavit reports that Defendant Kelly Schulz asked an agent what was the "magic number" of marijuana plants the would subject the couple to federal prosecution. As expressed above, although the refusal of consent to a warrantless search cannot be presented as evidence of guilt to a jury at trial, incriminating statements or requests voluntarily made to law enforcement officers outside the context of a custodial interrogation are not constitutionally protected. The evidence proposed to be found at the residence included not only marijuana, but also drug paraphernalia and packaging, written and computerized records of illegal drug activity, and currency related to drug sales, all of which could reasonably be expected to be found at a residence on the same property as a marijuana grow operation. Accordingly, upon a consideration of the totality of the circumstances presented in the affidavit, while the showing of probable cause for the search of the residence is marginal, affording great deference to the magistrate's determination as is required, the Court concludes that sufficient probable cause exists to support the issuance of

the search warrant.

Defendants also make a <u>Franks</u> challenge to the search warrant. <u>See</u> <u>Franks v. Delaware</u>, 438 U.S. 154 (1978). To prevail on the <u>Franks</u> challenge, Defendants must show two things by a preponderance of the evidence:  first, that Detective Hunter intentionally or recklessly made misstatements or omissions in the search warrant affidavit; and second, that the misstatements or omissions were material to a proper determination of probable cause.  <u>United</u> <u>States v. Burston</u>, 159 F.3d 1328, 1333 (11th Cir. 1998). The Defendants can make neither showing. Defendants contend that the failure to include in the affidavit that the nursery business was legitimate, and that the barn was outside the curtilage of the residence and separately metered amounted to intentionally or recklessly made misstatements or omissions. The Court finds that, in the haste to prepare the search warrant, the failure to include the adjective "legitimate" in the description of what appeared to officers to be an inactive nursery was neither intentional nor reckless. Moreover, even had the nursery been described as legitimate in the affidavit and the additional information regarding the barn been included, there would still be sufficient probable cause for the issuance of the search warrant.

Additionally, even if the search warrant were not supported by probable cause, the evidence obtained pursuant to the execution of the search warrant should not be excluded pursuant to the good faith exception to the exclusionary

rule first articulated in <u>United States v. Leon</u>, 468 U.S. 897 (1984). "<u>Leon</u> held

that the exclusionary rule does not bar the use of evidence obtained by officers

acting in good faith reliance on a warrant which is later found not to be supported

by probable cause." <u>United States v. Herring</u>, 492 F.3d 1212, 1215 (11th Cir.

2007). "[T]he officer's reliance on the magistrate's probable-cause determination

and on the technical sufficiency of the warrant he issues must be objectively

reasonable[.]" <u>Leon</u>, 468 U.S. at 922. "[A] reviewing court may look outside the

four corners of the affidavit in determining whether an officer acted in good faith

when relying upon an invalid warrant." <u>United States v. Martin</u>, 297 F.3d 1308,

1309 (11th Cir. 2002). "[T]he Government bears the burden of demonstrating the

applicability of the Leon good faith exception[.]" <u>United States v. Robinson</u>, 336

F.3d 1293, 1297 (11th Cir. 2003).

The good faith exception does not apply in the following situations:

(1) where the magistrate or judge in issuing a warrant was
misled by information in an affidavit that the affiant knew was
false or would have known was false except for his reckless
disregard of the truth; (2) where the issuing magistrate wholly
abandoned his judicial role; (3) where the affidavit supporting the
warrant is so lacking in indicia of probable cause as to render
official belief in its existence entirely unreasonable; and (4) where,
depending upon the circumstances of the particular case, a
warrant is so facially deficient- i.e., in failing to particularize the
place to be searched or the things to be seized-that the executing
officers cannot reasonably presume it to be valid.

<u>Id.</u> at 1296.

The Court determines that no exception to the <u>Leon</u> good faith exception

is present in this case. First, as expressed above in reference to the Franks challenge, Officer Hunter did not include any false information in support of the application for search warrant, and the information regarding the legitimacy of the nursery which the Defendants assert should have been included in the affidavit was not intentionally omitted with the intent to mislead and would not have affected the magistrate's determination of probable cause. Additionally, the affidavit for search warrant was reviewed by Judge Griffis, and there is no indication that he abandoned his role. Moreover, as expressed more fully above, there was a factual basis in support of the magistrate's determination that sufficient probable cause existed for the issuance of the search warrant such that the officers reliance on the warrant was reasonable and in good faith. The officer's good faith reliance on the search warrant is bolstered by factual evidence of criminal activity which could have been, but was not, included in the application for the search warrant, such as the odor of marijuana coming from the home and Defendant Eric Schulz's statements admitting that he grew marijuana. Lastly, the warrant is not facially deficient in the description of the residence or the items to be seized. Accordingly, even if the warrant were not supported by probable cause, the officers' good faith reliance on the validity of the warrant in the search of the home renders the exclusionary remedy inappropriate.

**C.      Search of Outbuilding**

Defendants object to the search of the outbuilding or barn, as the outbuilding was not specifically referenced in the search warrant as a location to be searched, due to Officer Hunter's inadvertent omission. In this case, the Defendants and Government agree that the barn or outbuilding was outside the curtilage of the residence. Upon consideration of the distance of the outbuilding from the home, the topographical separation of the area immediately surrounding the home from the outbuilding area, and the non-domestic use to which the outbuilding was put, the Court determines that the outbuilding was outside the curtilage of the home. See United States v. Dunn, 480 U.S. 294, 301 (1987).

Established Eleventh Circuit precedent makes clear that "'there is no legitimate expectation of privacy in outbuildings and open fields, *even if fenced*, unless they are part of the curtilage, or the immediate appurtenances, of a home.'" United States v. Hatch, 931 F.2d 1478, 1481 (11th Cir. 1991) (quoting United States v. Long, 674 F.2d 848, 853 (11th Cir. 1982)); see also United States v. Diaz, 2010 WL 4941963 (11th Cir. 2010). Accordingly, the search of the outbuilding could not have violated the protections of the Fourth Amendment.

Moreover, even if the Defendants did have a legitimate expectation of privacy in the outbuilding, the exclusionary rule is inapplicable to the evidence seized as a result of the search of the outbuilding because of the law

enforcement officers' good faith. The decision of the Eleventh Circuit Court of Appeals in United States v. Herring, 492 F.3d 1212 (11th Cir. 2007), is instructive here. In that case, law enforcement officers from one jurisdiction made an arrest of a person and discovered contraband pursuant to an assurance from a separate law enforcement agency in another jurisdiction that there was an outstanding warrant for the person arrested, although it was discovered later that the warrant had been recalled. The Court of Appeals determined that the exclusionary rule is inapplicable under those circumstances, and identified three conditions necessary for the application of the exclusionary rule: (1) misconduct by law enforcement, (2) application of the rule must result in appreciable deterrence of that misconduct, and (3) the benefits of applying the exclusionary rule must not be outweighed by the costs. Herring, 492 F.3d at 1217.

The conditions for application of the exclusionary rule are clearly not present in this case as it relates to the search of the outbuilding. First, there was no law enforcement misconduct. The failure to specifically include the outbuilding in the search warrant as an area to be searched is the result of Officer Hunter's negligence in the haste to prepare the warrant application. There is no dispute that, had the outbuilding been listed, there would have been probable cause for the search thereof. Moreover, when Officer Hunter instructed the other officers that they could search the barn, he was not aware that he had inadvertently failed to include the word "outbuilding" in the search warrant, and believed that

the search of the outbuilding pursuant to the warrant was permissible. The other officers relied in good faith on Officer Hunter's assurance in the search of the outbuilding, and their reliance thereon was not unreasonable.

Additionally, there will be no appreciable deterrence upon application of the exclusionary rule, because the mistakes in this case were the result of mere negligence, not bad faith misconduct. "Deterrents work best where the targeted conduct results from conscious decision making, because only if the decision maker considers the possible results of her actions can she be deterred." Id. at 1218.

Lastly, the minimal deterrence benefits of applying the exclusionary rule to evidence obtained during the search of the outbuilding cannot outweigh the cost of excluding the probative evidence of criminal conduct.

## CONCLUSION

Based on the foregoing, it is hereby ORDERED AND ADJUDGED that Defendants' Motions to Suppress (docs. 42, 43, 44, 45) are *denied*.

DONE AND ORDERED this twenty-fourth day of February, 2011.

s/ Stephan P. Mickle
Stephan P. Mickle
Chief United States District Judge